# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAUREN HAYES,<br><br>    Plaintiff<br><br>V.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, AND THE BLUE CROSS AND BLUE SHIELD MANAGED CARE PLAN,<br><br>    Defendants | CIVIL ACTION NO. |

## COMPLAINT

## INTRODUCTION

1. Plaintiff, Lauren Hayes brings this action against the Defendants, Blue Cross and Blue Shield of Massachusetts ("BCBSMA") and the Blue Cross and Blue Shield Managed Care Plan (the "Plan") (collectively referred to as "Defendants") for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et. seq. ("ERISA"). Ms. Hayes is a beneficiary of an ERISA welfare benefit plan administered and insured by BCBSMA.

2. Ms. Hayes challenges the Defendants': 1) unreasonable and unlawful denial of Ms. Hayes's claim for air ambulance transportation despite the substantial medical evidence demonstrating Ms. Hayes's entitlement to said benefits; 2) pattern of rejecting and/or ignoring the substantial evidence supporting Ms. Hayes's entitlement to coverage; 3) pattern of rejecting and/or ignoring the Plan terms authorizing coverage for such

treatment; 4) failure to provide Ms. Hayes with a full and fair review of her claim; and 5)

failure to provide a reasonable claims procedure that would yield a decision on the merits

of Ms. Hayes's claim.

## JURISDICTION

3.  This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. §

1132(e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that

the Defendants' breach of its ERISA obligations took place in this district.

## PARTIES

4.  The plaintiff, Ms. Hayes, presently resides in Massachusetts. At the time the treatment

was received, which is the subject of this Complaint, Ms. Hayes was a dependent

beneficiary of a participant in the Plan, within the meaning of 29 U.S.C. § 1002(2)(7).

5.  Ms. Hayes has standing to bring this action under 29 U.S.C. § 1132(a).

6.  The defendant, Blue Cross Blue Shield of Massachusetts, is a for-profit corporation, with

its principal place of business at the Landmark Center, 101 Huntington Ave, Suite 1300,

Boston, MA 02199.

7.  At all times relevant to the claims asserted in this Complaint, BCBSMA purported to act

as an ERISA claims fiduciary with respect to participants of the Plan generally, and

specifically with respect to Ms. Hayes, within the meaning of ERISA.

## FACTS

**The relevant Plan terms.**

8.  As a dependent of a Plan employee, Ms. Hayes was entitled to health insurance coverage

under the Plan.

9.  The Plan provides coverage for air ambulance transportation. Specifically, the Plan

states:

**Ambulance Services**
This health plan covers ambulance transport. This coverage includes:
- **Emergency Ambulance**. This includes an ambulance that takes you to an emergency medical facility for emergency medical care. For example, this may be an ambulance that takes you from an accident scene to the hospital. Or, it may take you from your home to a hospital due to a heart attack. This also means an air ambulance that takes you to a hospital when your emergency medical condition requires that you use an air ambulance rather than a ground ambulance. If you need help, call 911. Or, call your local emergency phone number. (Emphasis in original).

10. The Plan also covers medically necessary mileage associated with the transport, stating:

    Blue Cross reimburses health care providers based on:
    • Network provider reimbursement or contracted rates
    • Member benefits

11. Ms. Hayes's claim falls under the above Plan provisions authorizing coverage for the medically necessary air ambulance transportation she required to save her life.

12. At no time during the course of Ms. Hayes's claim and the internal appeals process did BCBSMA exercise its discretionary authority to manage the operation and administration of plan, or to interpret the terms of the Plan.

13. Any discretion to which BCBSMA may claim it is entitled under the Plan is negated by its failure to provide Ms. Hayes with a full and fair review of her claim, including explanations as to its adverse actions as proscribed by ERISA and its implementing regulations.

## Ms. Hayes's claim for air ambulance transportation to and BCBSMA's response.

14. On March 15, 2018, Ms. Hayes was a student at UMass Amherst when she went on vacation to Mexico. While there, Ms. Hayes sustained multiple head traumas while on a fishing boat. A metal pole on the boat came loose and struck her on the right side of her

head. The hit caused her to fall and strike the left occipital region of her head on the deck of the boat.

15. As a result of the accident, Ms. Hayes sustained the following injuries:

- Subarachnoid Hemorrhage
- Subdural Hematoma
- Cerebral Edema
- Occipital, Temporal and Mastoid Fracture
- 10 cm Scalp Laceration

16. Ms. Hayes was initially treated at a local clinic in Cancun, where her laceration, the least of her injuries, was addressed. She was then transferred to Galenia Hospital ("Galenia") in Cancun for further evaluation.

17. Ms. Hayes remained under the care of Dr. Roberto Graullera, an internal medicine physician at Galenia, despite her neurological condition, which failed to improve.

18. Despite the severity of her condition, which was life-threatening in nature, Ms. Hayes's medical records from Galenia demonstrate that Ms. Hayes was never evaluated or treated by a neurosurgeon or a neurologist.

19. Because Galenia was unable to adequately treat Ms. Hayes's injuries, a neurosurgeon at Galenia, Dr. Serna, recommended Ms. Hayes's transfer to Boston after she failed to improve over the course of two days at Galenia.

20. Dr. Serna never treated or evaluated Ms. Hayes.

21. On March 20, 2018, AeroCare Medical Transport Systems, Inc.'s ("AeroCare") transported Ms. Hayes (and her father, who had flown to Cancun to attend to her and assist in securing her care) to Beth Israel Deaconess Medical Center ("BIDMC") where she was admitted to the Neuro ICU, under the care of Dr. Martina Stippler.

22. Ms. Hayes remained in the BIDMC ICU for two days. BIDMC effectively saved Ms. Hayes's life and minimized the risks of long-term complications.

**Ms. Hayes's claim for air ambulance transportation and BCBSMA's denial of her claim**.

23. On April 3, 2018, AeroCare submitted a claim for Ms. Hayes's air ambulance transportation from Cancun to Boston.

24. Ms. Hayes's claim was supported by the independent medical opinion of Dr. Klein, who stated in his January 1, 2018 report:

Upon medical review, it is clear that Ms. Hayes required emergent transfer via fixed wing air ambulance for an upgraded level of care. Ms. Hayes was in critical condition and at high risk for a catastrophic event including death. As noted above, Ms. Hayes sustained multiple, severe focal neurologic injuries. Medical literature confirms mortality rates of approximately 40% for these types of injuries. The extent of her injuries required a highly qualified team of neurosurgical and neurologic experts to evaluate and manage her care.

The SAH, subdural hematoma and cerebral edema alone demonstrate Ms. Hayes was in critical condition. These injuries placed Ms. Hayes in **high risk for rapid deterioration**, **severe neurosurgical complications** and **death**. Her cerebral injuries placed her at risk for respiratory arrest, respiratory failure, coma and stroke. These risk factors were exacerbated by carotid canal involvement. Vascular complications are more frequently observed after these types of fractures when there is involvement of the carotid canal. Dr. Burn of Deaconess documented this finding. Additionally, studies have shown SAH patients with a subdural hematoma and/or a Glasgow Coma Scale of less than 15 have a higher risk of deterioration. While at Hospital Galenia, her GSC dropped from 15 to 14. The long-term neurological complications may include loss of motor and sensory function as well as bowel and bladder function. Furthermore, her multiple cranial fractures compounded by the SAH placed her at high risk seizure activity. Additionally, the mastoid fracture and temporal fracture placed her at risk for hearing loss, chronic sinus issues, chronic balance problems and vertigo. Post traumatic complications that may develop include cognitive, emotional, neuropsychological and behavioral dysfunction. It is important to note that swelling of the brain and neurologic changes including agitation, combativeness, and disorientation are documented in the records.

Due to these devastating injuries, Ms. Hayes was in critical condition and at high risk for a catastrophic event. Therefore, she required a highly qualified team of neurosurgical, neurologic and intensivist experts to diagnose, evaluate and manage her care which was not available in Mexico. Mexico is a

Developing/Third World Country which has different standards of care, licensing, availability of specialties, etc. that can impact the care of patients. In this case, although there are several concerns, the most alarming is that Ms. Hayes was attended by an internist at Hospital Galenia. She was not treated or evaluated by a neurosurgeon, neurologist or neuro nurse practitioner at Hospital Galenia.

The assumption that at Hospital Galenia, Cancun, Ms. Hayes was "evaluated by a neurosurgeon" is contrary to the medical records. In fact, there is no documentation of a neurosurgeon attending or evaluating Ms. Hayes.

Ms. Hayes' condition, her need for a higher level of care as well as the distance to the closest facility capable of providing the required care, necessitated rapid transport and medical interventions which could only be provided via fixed-winged aircraft with the appropriate medical staff and equipment.

25. BCBSMA denied Ms. Hayes's claim, initially disputing, without evidentiary support, the medically necessity of air ambulance transportation Ms. Hayes received from AeroCare. In particular, BCBSMA determined Ms. Hayes could have been adequately treated in Cancun, and that air transport to another hospital was medically unnecessary.

26. BCBSMA further denied Ms. Hayes's claim on the basis that even if Ms. Hayes could not have been treated in Cancun, she should have been transferred to the closest available facility, which was in Miami, and not Boston, for treatment.

27. On October 10, 2018, AeroCare and Ms. Hayes appealed BCBSMA's decision to deny coverage, including with their appeal, a second independent medical review conducted by Dr. Klein dated September 28, 2018.

28. Dr. Klein stated in his September 28, 2018 report:

**Medical Necessity Considerations**
Upon medical review, it is clear that Ms. Hayes required transfer via fixed-wing air ambulance for an upgraded level of care. It is also clear from the medical records and documentation Ms. Hayes was in critical condition and at high risk for catastrophic event including death. The extent of her injuries required a highly qualified team of neurosurgical and neurologic experts to evaluate and manage her care.

29. Relevantly, as a part of its appeal, AeroCare offered to accept payment for the cost of Ms. Hayes's emergency transportation to Miami, and not Boston.

30. The cost of providing Ms. Hayes with medically necessary air ambulance transportation from Cancun to Miami was $143,000. This is consistent with reasonable and customary charges in the industry.

31. On November 19, 2018, BCBSMA denied Ms. Hayes's appeal, again on the basis that the emergency transportation she received was not medically necessary, stating: "It is unclear what additional medical services were sought at Beth Israel Deaconess Medical Center, Boston, MA which could not have been provided at hospital Galenia, Cancun."

32. Ms. Hayes's medical records demonstrate the severity of Ms. Hayes's condition as well as Galenia's inability to care for Ms. Hayes.

33. In addition, Ms. Hayes's medical records from AeroCare provide documentation of Ms. Hayes's confusion and cognitive difficulties during the flight, suspected to be due in part to the excessive sedation she was subject to at Galenia. This sedation immediately ceased upon Ms. Hayes admission to BIDMC.

34. BCBSMA also denied coverage on the basis that Ms. Hayes was not transported to the nearest acute care hospital in Miami, even though AeroCare agreed to accept the cost of transporting Ms. Hayes to Miami and not Boston.

35. Ms. Hayes and AeroCare filed a request for external review of BCBSMA's decision on January 17, 2019.

36. On February 27, 2019, the external reviewer determined Ms. Hayes's transportation to Boston was not medically necessary solely on the basis that she could have been transported to Miami.

37. The external reviewer stated:

> This patient experienced a traumatic brain injury on 3/15/18. Because her condition had not improved by 3/20/18, it was arranged for her to be transferred to a facility in the United States that was able to treat her injuries. Rather than going to the closest facility (Miami), it was elected to transfer her closer to home in Boston, a transportation distance of over 1700 miles compared with slightly over 500 miles to Miami. The patient was not transported to the closest facility equipped to treat her. There would be no difference in care provided in Boston as compared with care provided in Miami. The transfer to a hospital in Boston was therefore, not medically necessary.

38. While the external reviewer determined Ms. Hayes could not be safely treated in Cancun, the reviewer decided Ms. Hayes could have received care in Miami and did not need to be flown to Boston. However, AeroCare had already resolved this matter, by agreeing to accept the cost of flying Ms. Hayes to Miami.

39. In light of the external reviewer's determination, on March 21, 2019, AeroCare wrote BCBSMA again requesting payment for Ms. Hayes's emergency transportation to Miami, only. As AeroCare stated:

> Mrs. Hayes benefits under her plan include coverage for mileage to the closest appropriate facility. BCBSMA's reimbursement policy in text and practice are clear with regard to this issue. If litigation becomes necessary, we will of course seek this information and documentation from you via discovery. Reimbursement is based on mileage to the closest appropriate facility. While not a foregone conclusion that Miami was the best facility in which to take Mr. Hayes, Aerocare billed you for Miami as it was the closest. This was done, again, per your own billing and general reimbursement guidelines.

40. On April 19, 2019, Teresa McInerney of BCBSMA wrote AeroCare's counsel indicating BCBSMA was not responsible for the emergency transportation Ms. Hayes received on medical necessity grounds.

41. Ms. McInerney also raised the plan's anti-assignment provision as a justification to deny coverage.

42. The Plan's anti-assignment provision is inapplicable to this matter, as Ms. Hayes, as an ERISA plan beneficiary, is pursuing coverage for the treatment she received by AeroCare.

**The Medical Necessity of Ms. Hayes's Emergency Treatment by Air Ambulance**.

43. Two independent medical reviewers, Dr. Klein and the external reviewer, both determined Ms. Hayes's medical condition required her to be transported via fixed-wing air ambulance.

44. BCBSMA's claim Ms. Hayes could have been treated in Cancun was unreasonable in light of the medical evidence in the record. BIDMC saved Ms. Hayes's life. She was able, after significant treatment, to return to classes and to graduate from college. There is also no question that her injuries were life-threatening and required neurological treatment she was unable to receive in Cancun.

45. Ms. Hayes is further entitled to reimbursement for emergency air ambulance transport to Miami. BCBSMA has refused to pay for Ms. Hayes's transportation to Miami on the basis that she was transported to Boston, which was not medically necessary. However, Ms. Hayes is only seeking reimbursement for transportation to Miami.

**Summary of Defendants' review of Ms. Hayes's claim.**

46. Ms. Hayes has exhausted her administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

47. Ms. Hayes's eligibility for benefits is based on the substantial evidence in the Defendants' possession.

48. The Defendants failed to respond to Ms. Hayes's and AeroCare's attempts to engage in a meaningful dialogue regarding the evaluation of her claim.

49. The Defendants failed to meet the minimum requirements for the denial of Ms. Hayes's benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

50. The Defendants have also failed to meet the Plan requirements for review of claims that have been denied.

51. The Defendants failed to provide Ms. Hayes with a full and fair review of her claim for benefits.

52. The decision to deny Ms. Hayes's benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan and contrary to law.

53. Due to the unlawful denials of benefits under ERISA, Ms. Hayes has suffered significant financial loss.

54. Having exhausted the administrative procedures provided by the Defendants, Ms. Hayes now brings this action.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for Unpaid Benefits)**
**(ALL DEFENDANTS)**

55. Ms. Hayes realleges each of the paragraphs above as if fully set forth herein.

56. The Plan is a contract.

57. Ms. Hayes has performed all her obligations under the contract.

58. Ms. Hayes met all the conditions for the payment of health insurance benefits under Plan, including but not limited to, providing Defendants proof of the medical necessity of the requested treatment services, pursuant to the terms of her insurance contract. Nonetheless, Defendants have failed to provide Ms. Hayes with the health insurance benefits she is due under the terms of the Plan.

59. 29 U.S.C. § 1132(a)(1)(B) states that:

> A civil action may be brought ---
>
> 1.    by a participant or beneficiary –
>
>> 1.    for the relief provided for in subsection (c) of this section, or
>>
>> 2.    to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

60. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

61. The Defendants unlawfully denied Ms. Hayes's benefits in part by failing to provide Ms. Hayes with a full and fair review of their decision to deny coverage for her claim.

62. In accordance with 29 U.S.C. §1132, Ms. Hayes is entitled to coverage for the air ambulance transportation she received to Boston, at the discounted rate of transportation to Miami as agreed to by AeroCare, due to the medical necessity of such treatment.

63. The Defendants have refused to provide Ms. Hayes with coverage for the covered medical services received, and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

## SECOND CAUSE OF ACTION
### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

64. Ms. Hayes realleges each of the paragraphs above as if fully set forth herein.

65. Under the standards applicable to ERISA, Ms. Hayes deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

66. Defendants have the ability to satisfy the award of attorney's fees and costs.

67. Ms. Hayes's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants. In particular, Plan participants should be granted the benefits, including the procedural benefits surrounding the review of their claims as outlined in the Plan and proscribed by ERISA. The Defendants have acted in bad faith in their handling of Ms. Hayes's claim and their denial of his health insurance benefits under the terms of the Plan.

68. The award of attorneys' fees and costs against the Defendant will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Ms. Hayes, requests this Court to:

(1)     Enter judgment for Ms. Hayes against Defendants;

(2)     Declare, adjudge, and decree that Defendants are obligated to pay Ms. Hayes the cost of the disputed services;

(3)     Order that the Defendants make restitution to Ms. Hayes in the amount of all losses sustained by Ms. Hayes as a result of the wrongful conduct alleged herein, together with prejudgment interest;

(6)     Award interest, costs, and attorneys' fees to Ms. Hayes; and

(7)     Award such other relief as this Court deems just and proper .

Date:  February 12, 2020                    Respectfully submitted,

                                            LAUREN HAYES

                                            By her attorneys,


                                            /s/ Mala M. Rafik
                                            Mala M. Rafik
                                            BBO No. 638075
                                            Sarah E. Burns
                                            BBO No. 676074
                                            ROSENFELD & RAFIK
                                            184 High Street, Suite 503
                                            Boston, MA 02110
                                            T: 617-723-7470
                                            F: 617-227-2843
                                            E:  mmr@rosenfeld.com